UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| LYNDA HILTON ) | |
| ) | |
| V. ) | NO. 2:05-CV-177 |
| ) | Magistrate Judge Inman |
| KING PHARMACEUTICALS, INC., ) | |
| and ACORDIA NATIONAL, INC. ) | |

## MEMORANDUM AND ORDER

During the relevant time, plaintiff's husband was an employee of King Pharmaceuticals Inc. ("King"). King established and maintained a self-funded group health insurance plan ("Plan") for its employees. By virtue of her husband's employment with King, plaintiff became a participant or beneficiary under the Plan in June 2002.

Plaintiff was morbidly obese and suffered from health problems attendant to that obesity. After consultation with Dr. Scott Watson in January 2002, plaintiff determined to undergo gastric bypass surgery.

It is beyond argument that the health insurance plan maintained by King was covered by the provisions of the Employment Retirement Income Security Act of 1974 ("ERISA").[1] King was the plan administrator of the Plan, and it contracted with Acordia National, Inc. ("Acordia") to administer claims made by beneficiaries of the Plan.

Plaintiff underwent laparoscopic bilateral gastric bypass surgery on July 19, 2002,

---

[1] 29 U.S.C. § 1001, *et seq.*

incurring in excess of $30,000.00 in medical bills in the process. As claims administrator, Acordia refused to pay these bills, asserting that gastric bypass surgery was explicitly excluded from coverage under the Plan. King concurred in that decision.

Plaintiff subsequently filed this suit, alleging that Acordia had "pre-certified" the surgical procedure, thereby indicating to her and her physicians that the procedure was (1) covered under the Plan, and (2) that all claims would be paid. Plaintiff first claims, in general terms, that she was denied benefits proffered to her under the Plan, relying on 29 U.S.C. § 1132(a)(1)(B). Secondly, she alleges that either King or Acordia, or both of them, are fiduciaries in the sense of 29 U.S.C. § 1002(21)(A), and that they breached their fiduciary duty by intentionally or negligently misleading plaintiff regarding the Plan's coverage for the gastric bypass procedure. Somewhat in a similar vein, by amendment to her complaint plaintiff also insists that King and Acordia should be estopped to deny coverage in light of their "pre-certification" of the procedure.

Plaintiff also alleges causes of action based on common law fraud and breach of contract.

Under any or all of the foregoing asserted causes of action, plaintiff seeks a recovery for 80% of her total medical expenses,[2] as well as prejudgment and postjudgment interest on that amount. Additionally, plaintiff claims that the defendants refused to provide to her any information or documentation regarding her claim and the denial thereof, and she seeks a

---

[2]Presumably, the amount of the total medical bills that would have been paid if there had been no dispute regarding coverage.

judgment in the amount of $100.00 per day from the date of the defendants' refusal pursuant to 29 U.S.C. § 1132(c)(1).

The defendants have filed a joint motion to dismiss (Doc. 14), and an amended joint motion to dismiss (Doc. 21).

Defendants' motions to dismiss were supported by matters outside the record,[3] prompting the plaintiff to file a motion asking that the joint motion to dismiss be converted into one for summary judgment under Rule 56. Over the defendants' vigorous opposition, the court granted that motion. In retrospect, that was an error, but fortunately not an unrectifiable one. Defendants' motion to dismiss, as amended, will be treated as such.

King and Acordia first argue that the gastric bypass procedure is explicitly and unequivocally excluded from coverage under the Plan. Of that, there is no doubt. In the "Exclusions and Limitations" section of the Plan booklet, paragraph nn, the following language appears: "Care and treatment of obesity, weight loss or dieting control whether or not it is, in any case, a part of the treatment Plan for another Sickness; . . . ."

Defendants also insist that plaintiff's claims and causes of action are preempted by ERISA and that plaintiff's suit therefore should be dismissed because (1) she did not exhaust her administrative remedies under the Plan, which is a requirement within the Sixth Circuit before an ERISA civil action may be maintained, *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979 (6th Cir. 1991). Defendants also argue that plaintiff's breach-of- fiduciary claims should be dismissed

---

[3]Specifically, the affidavits of Suzanne Reid and Judy Tweed, and the Plan "booklet" furnished to all King employees.

because the recovery of damages "is a right reserved exclusively to an ERISA plan, not individual plan participants," relying upon 29 U.S.C. § 1109, *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (1985), and *Weiner, D.P.M. v. Klaus & Co., Inc.*, 108 F.3d 86, 91-92 (6th Cir. 1997).

Next, defendants assert that plaintiff's common law claim for breach of contract and fraud must be dismissed because §§ 502(a)(2) and (a)(3) of ERISA[4] provide an adequate remedy.

Lastly, with regard to plaintiff's claim for the statutory penalty under 29 U.S.C. § 1132(c)(1) for defendants' refusal to furnish her the information she requested, defendants argue (1) that the statute does not obligate a plan administrator to provide an explanation of denials of claims, and in any event the administrator is not obligated to furnish plan documents and information to a beneficiary's attorney absent written authorization from the beneficiary, which plaintiff and her attorney did not provide.

The court will deal first with the issue raised in the paragraph immediately preceding. 29 U.S.C. § 1024(b)(4) provides that

> the administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

As seen, § 1024(b)(4) describes specifically the type of information and documents the Administrator is required to furnish to a beneficiary upon *written* request of that benefic-iary. No where in the statute is the administrator required to explain its reason for a denial of benefits. Moreover, the Sixth Circuit Court of Appeals has held that if a request for information comes from

---

[4]29 U.S.C. § 1132(a)(2) and (a)(3).

4

someone other than the beneficiary himself, that written request must be preceded or accompanied by a written authorization of the beneficiary that allows release of the information to the third party who actually made the request.  *See, Bartling v. Fruehauf Corp.*, 20 F.3d 1062 (6th Cir. 1994).  Defendants' motion to dismiss plaintiff's claim for the statutory penalty is GRANTED.

The remainder of plaintiffs' causes of action, and defendants' concomitant motions to dismiss, are not nearly so clear-cut.  To be sure, all of plaintiffs' common law causes of action - fraud, breach of contract, estoppel - clearly are preempted by ERISA.  *See, e.g., Cromwell v. Equicor-EquitableHCA Corp.*, 944 F.2d 1272 (6th Cir. 1991).  But the fact that ERISA preempts the state common law claims does not end the inquiry.  Based upon the record now before this Court, there is evidence that some entity on behalf of the plan administrator *pre-certified* the plaintiff's gastric bypass surgery, even though the Plan itself explicitly excluded such a procedure.  Reference is made to a letter dated January 6, 2005 to plaintiffs' attorney from Kurt Pomrenke, Vice President for King's Legal Affairs Department.  Mr. Pomrenke undertook his own investigation regarding the alleged pre-certification of plaintiff's gastric bypass procedure. According to Mr. Pomrenke, Highlands Wellmont Case Management Company, hired by and acting on behalf of Acordia, pre-certified the *medical necessity* for the procedure, and at the same time instructed plaintiff's surgeon to personally contact Acordia to "verify" coverage.  Plaintiff has stated in an affidavit that she was told by her surgeon and the hospital that the procedure had been pre-certified.

Again, there is evidence in this limited record that Acordia (through Highlands Wellmont) pre-certified plaintiff's gastric bypass procedure, its exclusion from the Plan's coverage notwithstanding.  For purposes of its motion to dismiss only, Acordia agrees that it was a "fiduciary" under ERISA.  A fiduciary under an ERISA plan is obligated to provide accurate information to a

5

plan's participants. In this regard, the case of *Krohn v. Huron Memorial Hosp.*,173 F.3d 542 (6th Cir. 1999) is enlightening. In *Krohn*, the plan-participant was given misinformation by a representative of the plan administrator, as a result of which the participant lost her entitlement to benefits. The participant filed suit, which the district judge dismissed. The Sixth Circuit reversed:

### *A. The Duty to Inform*

> [1] [2] ERISA imposes high standards of fiduciary duty upon administrators of an ERISA plan. *See* 29 U.S.C. § 1104(a)(1); *Kuper v. Iovenko,* 66 F.3d 1447, 1458 (6th Cir.1995). As we have previously explained, ERISA's fiduciary duty encompasses three components. *See Berlin v. Michigan Bell Telephone Co.,* 858 F.2d 1154, 1162 (6th Cir.1988). The first is a "duty of loyalty" which requires that "all decisions regarding an ERISA plan 'must be made with an eye single to the interests of the participants and beneficiaries.' " *Id.* (quoting *Donovan v. Bierwirth,* 680 F.2d 263, 271 (2d Cir.1982)); *accord* 29 U.S.C. § 1104(a)(1) (requiring a plan fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries"). Second, ERISA imposes a "prudent person" fiduciary obligation, which is codified in the requirement that a plan fiduciary exercise his duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man [sic] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims." 29 U.S.C. § 1104(a)(1)(B); *accord Berlin,* 858 F.2d at 1162. The prudent person standard, in combination with the duty of loyalty, "imposes an unwavering duty on an ERISA trustee to make decisions with single-minded devotion to a plan's participants and beneficiaries and, in so doing, to act as a prudent person would act in a similar situation." *Berlin,* 858 F.2d at 1162 (quoting *Morse v. Stanley,* 732 F.2d 1139, 1145 (2d Cir.1984)). Finally, ERISA requires that a fiduciary "act 'for the exclusive purpose' of providing benefits to plan beneficiaries." *Id.* (quoting *Donovan,* 680 F.2d at 271).
>
> [3] [4] Although the United States Supreme Court has expressly declined to reach the question of whether ERISA imposes a duty on fiduciaries to disclose truthful information on their own initiative, or in response to employee inquiries, *see Varity Corp. v. Howe,* 516 U.S. 489, 506, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), we have previously held that "[a] fiduciary must give complete and accurate

6

plan's participants. In this regard, the case of *Krohn v. Huron Memorial Hosp.*,173 F.3d 542 (6th Cir. 1999) is enlightening. In *Krohn*, the plan-participant was given misinformation by a representative of the plan administrator, as a result of which the participant lost her entitlement to benefits. The participant filed suit, which the district judge dismissed. The Sixth Circuit reversed:

### *A. The Duty to Inform*

> [1] [2] ERISA imposes high standards of fiduciary duty upon administrators of an ERISA plan. *See* 29 U.S.C. § 1104(a)(1); *Kuper v. Iovenko,* 66 F.3d 1447, 1458 (6th Cir.1995). As we have previously explained, ERISA's fiduciary duty encompasses three components. *See Berlin v. Michigan Bell Telephone Co.,* 858 F.2d 1154, 1162 (6th Cir.1988). The first is a "duty of loyalty" which requires that "all decisions regarding an ERISA plan 'must be made with an eye single to the interests of the participants and beneficiaries.' " *Id.* (quoting *Donovan v. Bierwirth,* 680 F.2d 263, 271 (2d Cir.1982)); *accord* 29 U.S.C. § 1104(a)(1) (requiring a plan fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries"). Second, ERISA imposes a "prudent person" fiduciary obligation, which is codified in the requirement that a plan fiduciary exercise his duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man [sic] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims." 29 U.S.C. § 1104(a)(1)(B); *accord Berlin,* 858 F.2d at 1162. The prudent person standard, in combination with the duty of loyalty, "imposes an unwavering duty on an ERISA trustee to make decisions with single-minded devotion to a plan's participants and beneficiaries and, in so doing, to act as a prudent person would act in a similar situation." *Berlin,* 858 F.2d at 1162 (quoting *Morse v. Stanley,* 732 F.2d 1139, 1145 (2d Cir.1984)). Finally, ERISA requires that a fiduciary "act 'for the exclusive purpose' of providing benefits to plan beneficiaries." *Id.* (quoting *Donovan,* 680 F.2d at 271).
>
> [3] [4] Although the United States Supreme Court has expressly declined to reach the question of whether ERISA imposes a duty on fiduciaries to disclose truthful information on their own initiative, or in response to employee inquiries, *see Varity Corp. v. Howe,* 516 U.S. 489, 506, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), we have previously held that "[a] fiduciary must give complete and accurate

information in response to participants' questions····" *Drennan v. General Motors Corp.,* 977 F.2d 246, 251 (6th Cir.1992); *accord Electro-Mechanical Corp. v. Ogan,* 9 F.3d 445, 451 (6th Cir.1993) ("ERISA imposes a duty upon fiduciaries to respond promptly and adequately to employee-initiated inquiries regarding the plan or any of its terms."). We have also held that "[m]isleading communications to plan participants 'regarding plan administration (for example, eligibility under a plan, the extent of benefits under a plan) will support a claim for breach of fiduciary duty.' " *Drennan,* 977 F.2d at 251 (quoting *Berlin,* 858 F.2d at 1163). Furthermore, a fiduciary breaches its duties by materially misleading plan participants, regardless of whether the fiduciary's statements or omissions were made negligently or intentionally. *See Berlin,* 858 F.2d at 1163-64. In the present context, a misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision in pursuing disability benefits to which she may be entitled. *See In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.,* 57 F.3d 1255, 1264 (3d Cir.1995). 173 F.3d at 547.

\* \* \*

[Had the plan administrator] adequately informed plaintiff about the availability of long-term disability benefits through its insurer, it is likely that she would have chosen a difference course of action. *Id.* at 551.

After again noting that a fiduciary of an employee benefit plan has a duty to respond fully and adequately to inquiries about employee benefits, the Court of Appeals in *Krohm* held that the plan administrator had breached its fiduciary duty by failing to provide the plaintiff with information regarding the availability of certain benefits. It reversed the decision of the district court, and remanded for a calculation of damages. *Id.* at 552.

If Highlands Wellmont, acting on behalf of Acordia, simply pre-certified the procedure without qualification, then this case will proceed down one track. If, on the other hand, Highlands Wellmont merely certified the procedure as "medically necessary," and advised plaintiff's physician

7

that it was incumbent upon him to verify coverage with Acordia, then this litigation will proceed down yet another track.[5] Someone made a costly mistake; the question is, who? The court is loathe to make a ruling on this critical issue with such sparse evidence.

Defendants' motion to dismiss that portion of plaintiff's complaint that seeks the statutory penalty is GRANTED, as aforesaid. Defendants' motion to dismiss the remainder of plaintiff's complaint, for the reasons discussed above, is DENIED.

Obviously, some amount of pretrial discovery will be necessary. Hopefully, the attorneys can agree on what pretrial depositions would be appropriate.[6] If not, the parties should bring that issue to this Court's attention immediately. All agreed or judicially-authorized depositions should be completed within the next ninety days.

SO ORDERED:

s/ Dennis H. Inman<br>United States Magistrate Judge

Hilton, Lynda2

---

[5] To be sure, plaintiff and her husband had a Plan booklet in which that exclusionary language appeared, but that in and of itself does not excuse what *may* have been misinformation imparted to plaintiff by the administrator. *Krohn, supra,* at 550.

[6] Dr. Watson comes immediately to mind, as does the appropriate representative of the Johnson City Medical Center. Similarly, the deposition of the representative of Highlands Wellmont, who has knowledge of what was told to Dr. Watson regarding plaintiff's procedure, is necessary. It should be borne in mind that discovery in ERISA cases is limited. The attorneys hopefully are aware of the core issue in this case.

8